IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRANSCONTINENTAL REFRIGERATED LINES**, by **LAWRENCE V. YOUNG, ESQ.**, Liquidating Agent, | : CIVIL ACTION NO. 1:13-CV-2163 <br> : <br> : (Chief Judge Conner) <br> : |
| **Plaintiff** | : |
| v. | : |
| **NEW PRIME, INC.**, *et al.*, | : |
| **Defendants** | : |

# **MEMORANDUM**

The above-captioned matter is an adversarial proceeding withdrawn from the United States Bankruptcy Court for the Middle District of Pennsylvania.  See <u>In re</u> Transcontinental Refrigerated Lines, Inc., No. 1:13-CV-2163, 2013 WL 5937963 (M.D. Pa. Nov. 5, 2013).  Plaintiff and debtor Transcontinental Refrigerated Lines, Inc. ("Transcontinental"), through its liquidating agent, Lawrence V. Young, Esq., ("Young"), alleges that its owner, Stephen P. Hrobuchak, Jr., ("Hrobuchak"), transferred funds to various entities prior to declaring bankruptcy to defraud Transcontinental's creditors.  (Doc. 143 ¶¶ 166-241).  Defendants Janis Hrobuchak, Nicole Hrobuchak, John Hrobuchak, and Stephen Hrobuchak (collectively, "Lily Lake Beneficiaries") move for summary judgment, contending that they received no property or other value from Transcontinental.  (Doc. 154).  The court will grant the Lily Lake Beneficiaries' motion.

I. **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

Federal Rule of Civil Procedure 56(c) requires movants and nonmovants alike to support factual assertions by "citing to particular parts of materials in the record" or otherwise "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c). Rule 56(e) allows the court to deem undisputed any fact not properly supported by record evidence. See FED. R. CIV. P. 56(e)(2). The Local Rules of Court undergird these principles by requiring Rule 56 motions to "be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. The Local Rule also requires the party opposing summary judgment to file a responsive statement identifying genuine issues to be tried and mandates that both parties' submissions

"include reference to the parts of the record that support the statements." Id. Consistent with Federal Rule 56, the Local Rule allows a court to deem a moving party's statement to be admitted when it is not properly "controverted by the statement required to be served by the opposing party." Id.; see Thomas v. United States, 558 F. Supp. 2d 553, 558-59 (M.D. Pa. 2008). In resolving the instant motion, the court has reviewed the parties' statements and has independently considered the entire record.

## II.   Factual Background and Procedural History

The factual background summarized herein derives primarily from the Lily Lake Beneficiaries' statement of facts (Doc. 155) and is supplemented by both the record and the court's prior opinions in this matter. See In re Transcontinental Refrigerated Lines, Inc., No. 1:13-CV-2163, 2014 WL 2471936 (M.D. Pa. June 3, 2014); In re Transcontinental Refrigerated Lines, Inc., No. 1:13-CV-2163, 2013 WL 5937963 (M.D. Pa. Nov. 5, 2013).

At all times material to this proceeding, Hrobuchak was the president and sole shareholder of Transcontinental. In re Transcontinental, 2014 WL 2471936, at *2. The instant fraudulent transfer claims stem from two prepetition transactions orchestrated by Hrobuchak which closed on December 3, 2007. See id. The first, referred to as the Asset Purchase Agreement, transferred all of Transcontinental's assets to defendant New Prime, Inc. ("New Prime"), in exchange for net cash at closing of $29,000. (See Doc. 143 ¶ 11 & Ex. B at 26). The second, referred to as the Agreement to Purchase Real Estate, transferred three properties to New Prime from Hrobuchak and defendants Lily Lake Family Trust ("the Lily Lake Trust")

and S&M Leasing, Inc. ("S&M Leasing"), in exchange for $5,902,000. (Doc. 155 ¶ 5; Doc. 160 ¶ 5). Specifically, New Prime paid $536,800 for one unimproved parcel of real estate to S&M Leasing; $100,000 to Hrobuchak for one unimproved parcel; and $5,265,200 to the Lily Lake Trust for one improved parcel. (Doc. 155 ¶¶ 6-8; Doc. 160 ¶¶ 6-8). The Lily Lake Beneficiaries indicate that the price of the third parcel was $5,262,200, but the deed attached to the statement of facts reveals that the price was in fact $5,265,200. (See Doc. 155-3). The court presumes that the $5,262,200 figure in the beneficiaries' statement of facts is merely a typographical error.

None of the properties transferred to New Prime were owned by Transcontinental. (Doc. 155 ¶ 10; Doc. 160 ¶ 10). The Lily Lake Beneficiaries had no interest in Transcontinental and did not receive any of its property or assets in connection with either of the transactions. (Doc. 155 ¶¶ 11-12). Transcontinental seemingly concedes that none of its assets were directly transferred to the Lily Lake Beneficiaries. (See Doc. 160 ¶¶ 11-12). Instead, Transcontinental avers that Hrobuchak engaged in a complicated scheme to undervalue Transcontinental's assets and overvalue the family real estate parcels to divert asset sale proceeds away from the bankruptcy estate. (See Doc. 160 ¶ 12). Transcontinental broadly asserts that New Prime paid approximately $1 million more for the real estate than

it was worth, contending that separate appraisals valued the property at $5,100,000 and $4,655,000.[1]  (See id. ¶¶ 13, 15).

The Lily Lake Beneficiaries support their motion with an appraisal by Kanton Realty, Inc. ("Kanton"), reflecting a combined market value of $5,100,000 and implied market value, "based upon a common level ratio of 5%," of $5,987,000 for all three properties.  (Doc. 155 ¶ 14; Doc. 155-5; see also Doc. 160 ¶ 13).  In its responsive statement, Transcontinental admits that Kanton assessed these values but, without elaboration, disputes "[d]efendants' method of calculation."  (See Doc. 160 ¶¶ 13, 15).  For its part, Transcontinental submits no evidence in support of its fraudulent value-shifting theory.  (See id. ¶ 12).  Indeed, Transcontinental does not cite the record whatsoever in its entire statement of facts.  (See generally Doc. 160).

After learning of the asset sale, some of Transcontinental's creditors filed a Chapter 7 involuntary bankruptcy petition.  In re Transcontinental Refrigerated Lines, Inc., No. 5:08-BK-50578, Doc. 1 (Bankr. M.D. Pa. 2008).  The bankruptcy court confirmed the First Amended Plan of Reorganization of Official Unsecured Creditors' Committee for Transcontinental on November 16, 2009, and appointed Young as liquidating agent.  In re Transcontinental, 2014 WL 2471936, at *1.  On February 26, 2010, Transcontinental initiated this adversary proceeding against New Prime, Hrobuchak, the Lily Lake Beneficiaries, the Lily Lake Trust (now

---

[1] In paragraph 13 of its responsive statement of facts, Transcontinental identifies appraisal values of $5,100 and $4,655.  (Doc. 160 ¶ 13).  These values are drastically lower than any other calculation identified in the record, and further are inconsistent with Transcontinental's later statement that the average appraised market value is $4,877,500.  (See id.)  The court presumes that the $5,100 and $4,655 figures are typographical errors, and that the parties intended to state values in the four and five million dollar range.

5

reconstituted as the Cook Island Trust), and S&M Leasing.  Id.  Transcontinental also named Hrobuchak's former counsel, Eric Kalnis and James Duggan, as well as their firm, Handler, Thayer and Duggan (later Handler Thayer, LLP), in addition to Cherry Marine, LLC ("Cherry Marine"); Kevin Davis, a former Transcontinental employee; and a John Doe defendant.  Id.

Transcontinental filed an amended complaint on September 24, 2010 in response to a Rule 12 motion to dismiss by several defendants.  Id.  On June 10, 2013, the bankruptcy court dismissed Transcontinental's non-core claims for lack of subject matter jurisdiction.  See In re Transcontinental Refrigerated Lines, Inc., 494 B.R. 816, 820-21 (Bankr. M.D. Pa. 2013).  The court also held that fraudulent transfer claims under 11 U.S.C. § 548 could not be tried before it unless the parties waived their right to a jury trial or consented to a bankruptcy court jury trial.  See id. at 819-20.  In response, the parties moved to withdraw the reference of the adversary proceeding from the bankruptcy court to this court, a request the undersigned granted on November 5, 2013.  See In re Transcontinental Refrigerated Lines, Inc., 2013 WL 5937963.

Since that time, Transcontinental has settled with New Prime and Hrobuchak's former counsel and dismissed its claims against Kevin Davis.  (See Docs. 100, 183-184, 186-187).  Further, the Clerk of Court entered default for failure to plead or otherwise defend against both Cherry Marine and S&M Leasing.  (See Doc. 145).  Remaining defendants are thus Hrobuchak, who is proceeding *pro se*, the Lily Lake Trust, and the Lily Lake Beneficiaries.  On April 1, 2015, the latter moved for summary judgment as to Counts V and VI, which name them collectively

6

in claims for fraudulent transfer of a debtor's property. (Doc. 154). The motion is fully briefed and ripe for disposition.

**III.   Discussion**

The Bankruptcy Code contemplates two types of fraudulent transfer claims: (1) actual fraud, under 11 U.S.C. § 548(a)(1)(A), and (2) constructive fraud, under 11 U.S.C. § 548(a)(1)(B). A claim of actual fraud focuses on intent, and requires proof that the debtor made a transfer with "actual intent to hinder, delay, or defraud" its creditors. 11 U.S.C. § 548(a)(1)(A). By contrast, a constructive fraud claim tasks the court to query the legitimacy of the transaction and its effect, assessing whether the transferor "received less than a reasonably equivalent value" in the exchange and whether, *inter alia*, the transaction rendered the debtor insolvent or left the debtor with "unreasonably small capital." 11 U.S.C. § 548(a)(1)(B). Both claims require the trustee or liquidating agent to prove that the transfer involved "an interest of the debtor in property." 11 U.S.C. § 548(a)(1).

In its second amended complaint, Transcontinental asserts both actual and constructive fraud claims against the Lily Lake Beneficiaries. Transcontinental alleges that Hrobuchak devised an intricate scheme to overvalue the real estate transactions, undervalue the asset transaction, and divert proceeds to his family members as beneficiaries of the Lily Lake Trust. (Doc. 143 ¶¶ 202-228). In other words, Hrobuchak fraudulently transferred value from Transcontinental's assets to the real estate transaction and, in turn, the Lily Lake Beneficiaries. (Id.; Doc. 159 at 7-10). In its Rule 56 response, Transcontinental reiterates this allegation, citing its second amended complaint—and only its second amended complaint—as support

7

for its theory that the Lily Lake Beneficiaries received an interest in property rightly belonging to Transcontinental.  (See Doc. 159 at 7-10).

Transcontinental's opposition papers fall short of the Rule 56 mark for respondents.  Summary judgment motion practice tasks a non-moving party to "rebut the motion with facts in the record."  Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) (quoting Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109-10 (3d Cir. 1985)).  Thus, the non-movant cannot rely exclusively on the unproven assertions of its pleading to overcome a Rule 56 motion.  See El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007) (citing Berckeley Inv. Group, 455 F.3d at 201).  Rather, as the party bearing the burden of proof at trial, Transcontinental "must point to *some* evidence in the record that creates a genuine issue of material fact."  Berckeley Inv. Group, 455 F.3d at 201 (emphasis added).  Transcontinental fails in this endeavor.

In their statement of material facts, the Lily Lake Beneficiaries establish two pertinent facts that Transcontinental does not dispute: first, that New Prime paid $536,800 to S&M Leasing; $100,000 to Hrobuchak; and $5,265,200 to the Lily Lake Trust for the three parcels of real property under the Agreement to Purchase Real Estate, (Doc. 155 ¶¶ 6-8; Doc. 160 ¶¶ 6-8); and second, that Transcontinental held no ownership or other interest in the property sold, (see Doc. 155 ¶ 10; Doc. 160 ¶ 10).  Hence, the undisputed Rule 56 record establishes that Transcontinental did not transfer any property directly to the Lily Lake Beneficiaries.  (Doc. 155 ¶¶ 6-8, 10; Doc. 160 ¶¶ 6-8, 10).  The Lily Lake Beneficiaries then cite both the Asset Purchase Agreement and the Agreement to Purchase Real Estate as proof that no beneficiary

received property of Transcontinental, either directly or indirectly, in connection with either transaction. (Doc. 155 ¶¶ 10, 12). Transcontinental denies this final, crucial fact, but cites no evidence to refute it. (See Doc. 160 ¶ 12).

Transcontinental proclaims that its second amended complaint articulates a "cogent theory of diverting assets and consideration away from [Transcontinental] and the creditors" which, if proven at trial, would establish a fraudulent transfer. (Doc. 159 at 9). Transcontinental insists that its pleading raises sufficient factual disputes to carry its claims to trial. (See id.) But Rule 56 demands more than a "cogent theory" comprised of unsubstantiated allegations and elusive assurances of future proof. See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010) (citing Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989)); Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325). The rule requires Transcontinental to submit evidence in support of its claims and to demonstrate that genuine disputes of fact remain for trial. See FED. R. CIV. P. 56(e). Mere allegations, conjecture, and suspicion simply do not suffice. Betts, 621 F.3d at 252; Podobnik, 409 F.3d at 594.

Transcontinental also relies on the court's June 3, 2014 opinion discussing the applicability of the crime-fraud exception as support for its fraudulent transfer claims. (See Doc. 159 at 11). In that opinion, the court ordered Hrobuchak's former counsel to turn over to Transcontinental a number of communications, concluding that the attorney-client privilege was vitiated by the crime-fraud exception. *In re Transcontinental Refrigerated Lines*, 2014 WL 2471936, at *4-13. Specifically, the court held that certain of the privileged documents could permit a jury to conclude

that Hrobuchak broadly intended to defraud his creditors. Id. at *12. Fraudulent intent, however, is but one element of a fraudulent transfer claim, see 11 U.S.C. § 548(a), and the court's prior privilege analysis speaks *only* to perceived intent. It does not cure Transcontinental's failure to prove that the Lily Lake Beneficiaries received an "interest of the debtor in property." See id. Hence, the court rejects Transcontinental's reliance on the crime-fraud opinion as abdication of its summary judgment obligations.

Transcontinental's self-described "cogent *theory*" of fraud finds no support in the Rule 56 record. As such, Transcontinental has failed in its burden of proving that the Lily Lake Beneficiaries received some interest of the debtor in property, a prerequisite for avoidance of a transfer. See 11 U.S.C. § 548(a).

### IV. Conclusion

The court will grant the Lily Lake Beneficiaries' motion (Doc. 154) in its entirety and enter judgment in their favor on Counts V and VI of Transcontinental's second amended adversary complaint. Entry of judgment will be deferred pending final resolution of this litigation. This matter shall proceed on the following claims as set forth in the second amended complaint: Counts I and II against Hrobuchak; Counts V and VI against Hrobuchak and the Lily Lake Trust (reconstituted as the

Cook Island Trust); and Counts VII and VIII against Hrobuchak and his wife, Janis Hrobuchak. An appropriate order shall issue.

      /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    January 6, 2016